UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAR RASHAD GEETER,<br>Petitioner,<br>v.<br>MARCUS POLLARD, Warden,<br>Respondent. | Case No. 20-cv-02188-RS<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

Petitioner seeks federal habeas relief under 28 U.S.C. § 2254 from his state convictions. Following an order granting Respondent's motion to dismiss certain claims in the Petitioner's First Amended Petition ("FAP"), four claims remain. Because these claims lack merit, the petition is denied.

## II. BACKGROUND

The following facts come from the state appellate court's opinion affirming Petitioner's convictions. *See generally People v. Geeter*, No. A148523, 2018 WL 5095090 (Cal. Ct. App. 2018). According to evidence presented at trial, Petitioner approached a minor in July 2014, plied her with vodka, and told her he was a pimp who would train her in prostitution. He then took her to Capp Street (an area frequented by sex workers), gave her instructions, and pocketed the proceeds from two commercial sex encounters that ensued. Over the following two nights, the minor continued to engage in commercial sex acts at Petitioner's direction. He also raped her during this time. She

eventually got in touch with friends who told her parents of her whereabouts; her parents, in turn, notified the police, who located her and learned about Petitioner's actions.

In December 2014 and January 2015, Petitioner carried out a similar course of action with a different minor—meeting her, raping her, and taking proceeds from commercial sex acts she performed for others at his instruction. He also assaulted her.

On January 21, 2015, local police arrested Petitioner. He was subsequently tried by a jury in San Francisco. At trial, the prosecution introduced evidence that, *inter alia*, Petitioner's DNA matched DNA detected in one of the minors; the areas he took the minors were well-known for prostitution; and Petitioner gave advice on managing prostitutes during three jail phone calls made in February and March 2015. As relevant here, the trial court also permitted the prosecution to introduce evidence of two prior uncharged incidents involving the Petitioner. The first was his February 2012 arrest, which did not result in charges against him, on suspicion of supervising a prostitute in an area known for sex work. The other was his August 2013 arrest for loitering with intent to commit prostitution around Capp Street—the precise location where he took the first minor in July 2015.

After the close of evidence, the court instructed the jury that it could consider evidence of his prior conduct "only if the People have proved by a preponderance of the evidence that the defendant in fact committed such acts." *Geeter*, 2018 WL 5095090, at *5. If so, the court instructed, "you may but are not required to consider that evidence for the limited purpose of deciding whether or not the defendant had a plan or scheme to commit the pimping and pandering offenses alleged in this case." *Id.*

Because Petitioner had testified in his own defense, the court also instructed the jury on CALCRIM No. 361, which states:

> If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so [based] on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The people must still prove the defendant guilty beyond a reasonable doubt.

>If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of such failure.

*Id.*

The jury convicted Petitioner on numerous counts relating to commercial sex trafficking, forcible rape and oral copulation, and the pimping and pandering of two minors aged fourteen and sixteen. The court sentenced him to a prison term of fifteen years to life plus eighty-two years. The California Court of Appeal for the First Appellate District affirmed the judgment against him in 2018. The California Supreme Court subsequently denied review in January 2019.

On March 31, 2020, Petitioner petitioned for a writ of habeas corpus in this court. Less than two weeks later, he constructively filed a pro se petition for writ of habeas corpus in the California Court of Appeal. His subsequent request to stay the proceedings in federal court pending the state Court of Appeal's decision was granted in accord with *Rhines v. Weber*, 544 U.S. 269 (2005). The California Court of Appeal denied his state petition on June 18, 2020. Nearly a year later, Petitioner—now represented by counsel—sought a writ of habeas corpus in the California Supreme Court, which denied that petition on September 22, 2021. After another year passed, Petitioner filed a motion in this court to dissolve the *Rhines* stay in this case, presenting the instant FAP with eight claims.

Four of those claims have since been dismissed as not cognizable or procedurally defaulted. *See Geeter v. Pollard*, No. 20-cv-02188-RS (PR), 2024 WL 1018521, at *1 (N.D. Cal. Mar. 7, 2024). As a result, Petitioner's four remaining claims, all grounded in either the Fifth or Fourteenth Amendment, are that: (1) instructing the jury on CALCRIM 361 violated his due process rights because it allowed the jury to draw an improper permissive inference; (2) admitting evidence of his other arrests violated his due process rights because it was highly prejudicial; (3) permitting testimony by a detective who stated that he believed the victim likewise violated his due process rights because it was highly prejudicial; and (4) the cumulative effect of multiple trial errors violated his due process rights.

### III. LEGAL STANDARD

Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a person in custody pursuant to the judgment of a State court" may have his petition for habeas corpus

entertained by a federal district court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A court may not grant the petition with respect to any claim adjudicated on the merits in state court unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under Section 2254(d)(1)'s "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal habeas court conducting the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409. A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Ultimately, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In this regard, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).

## IV. DISCUSSION

### A. Claim 1: CALCRIM 361 Instruction

Petitioner's first claim concerns the trial court's decision to instruct the jury on CALCRIM 361, which states that the jury "may consider" a defendant's "fail[ure] in his testimony to explain or deny evidence against him." The California Court of Appeal has held that CALCRIM 361 "rests on the logical inference that if a person charged with a crime is given the opportunity to explain or deny evidence against him [or her] but fails to do so (or gives an implausible explanation), then that evidence may be entitled to added weight." *People v. Vega*, 236 Cal. App. 4th 484, 496 (2015). The *Vega* court concluded that there is "no inconsistency between [a] defendant's right to testify and the attendant risk of being confronted with evidence calling into question his testimony" because failing "to explain or deny adverse evidence can be a basis for disbelieving any witness's testimony and is always relevant to credibility." *Id*.

Petitioner nevertheless argues that the CALCRIM 361 instruction violated his Fifth Amendment right to testify in his own defense and his Fifth and Fourteenth Amendment rights to a fair trial. *See Rock v. Arkansas*, 483 U.S. 44, 51–53 (1987); *Duncan v. Louisiana*, 391 U.S. 145, 158 (1968). When he presented this claim in state court, the California Court of Appeal highlighted that the California Supreme Court had previously held a substantively similar instruction to be constitutional. *Geeter*, 2018 WL 5095090, at *6 (citing *People v. Saddler*, 24 Cal.3d 671, 678–81 (1979)). Having subsequently applied *Saddler* to deny a constitutional challenge to CALCRIM No. 361, *see People v. Rodriguez*, 170 Cal. App. 4th 1062, 1067 (Cal. Ct. App. 2009), the Court of Appeal rejected Petitioner's facial argument.

To the extent Petitioner argued that the instruction lacked an evidentiary foundation as applied to his testimony because he denied or otherwise explained all material evidence against him, the Court of Appeal found at least one issue he failed to explain: how one of his phone numbers became associated with a sex work advertisement for a woman named Diamond. Moreover, even if the trial court *had* erred in giving the CALCRIM No. 361 instruction, the Court of Appeal held that the error was harmless because there was no reasonable probability that he would have achieved a more favorable outcome without the instruction. *Geeter*, 2018 WL 5095090, at *7 (citing *People v.*

*Watson*, 46 Cal.2d 818, 836 (1956)).

Federal habeas relief is unwarranted in this instance, where the state appellate court reasonably rejected Petitioner's CALCRIM 361 claim on the merits. That decision was neither contrary to nor an unreasonable application of clearly established Federal law, and it did not rest on an objectively unreasonable factual determination. At the outset, the instruction itself accords with constitutional law, as the California Court of Appeal held in *Rodriguez*. 170 Cal. App. 4th at 1067. Indeed, "while CALCRIM No. 361 has been challenged in numerous petitions for habeas corpus in California federal courts, no court has found it to be contrary to a rule of law contained in a Supreme Court decision." *Burgos v. Sexton*, No. 17-cv-06102-WHO, 2019 WL 1598221, at *17 (N.D. Cal. Apr. 15, 2019). Applied to this case, moreover, the instruction was reasonable: the trial record demonstrates that Petitioner did not explain how his phone number came to be advertised as a contact for sex work. To be sure, Petitioner explained that he often lost cell phones, as his counsel now highlights in his petition. What Petitioner failed to do, however, is explain why the number of a phone he may have lost featured, weeks before he lost it, in a sex work ad. As the California Supreme Court has explained, CALCRIM 361 is applicable when a defendant "completely fails to explain or deny incriminating evidence, or claims to lack knowledge and it appears from the evidence that the defendant could reasonably be expected to have that knowledge." *People v. Cortez*, 63 Cal. 4th 101, 117 (2016). The trial court therefore correctly included CALCRIM 361 because Petitioner's proffered explanation (that he had loaned his phone to a friend who was a sex worker and that he often lost phones) was an inadequate explanation.

Petitioner also argues that CALCRIM 361 had a chilling effect on his constitutional right to testify. As another court in this district observed in a similar instance:

> The idea that a "chilling effect" on others not before the court should be taken into account in constitutional adjudication is familiar from First Amendment overbreadth and vagueness doctrines (*see, e.g.*, *People ex rel. Gallo v. Acuna* 14 Cal. 4th 1090, 1114, (1997); *Concerned Dog Owners of California v. City of Los Angeles*, 194 Cal. App. 4th 1219, 1230–32 (2011)), a setting where questions often arise about whether those whose voices are potentially stifled by overbroad or vague regulation of free

> expression will be motivated to bring constitutional challenges. But that mode of analysis seems a poor fit here.
>
> Even assuming an undue "chilling effect" on the procedural rights of criminal defendants generally may properly be raised as a basis for challenging a jury instruction (*see People v. Beyah* 170 Cal. App. 4th 1241, 1248–50 (2009)), we think it unlikely that CALCRIM No. 361 would have that effect beyond the ever-present prospect of facing cross examination. It certainly did not have that effect here. The jury instructions in this case were settled before defendant took the stand. Thus, defendant testified at length despite the knowledge in advance that he would face this instruction, and his counsel acquiesced.

*Vega v. Montgomery,* No. 16-cv-05145-YGR, 2017 WL 4808606, at *11 (N.D. Cal. 2017).

Even if the instruction could be construed as erroneous, the state appellate court reasonably explained why it did not result in actual prejudice, *i.e.*, "a substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The record in this case was robust. The jury instructions as a whole made clear that not all instructions were necessarily applicable and, crucially, "did not direct the jury to draw any adverse inferences." *Geeter*, 2018 WL 5095090, at *7. At bottom, the prior order rejecting this claim is entitled to AEDPA deference, and the claim is denied.

### B. Claim 2: Other Crimes Evidence

Petitioner's second claim is that the trial court unreasonably admitted evidence of his prior bad acts under California Evidence Code Section 1101(b), in contravention of his due process rights. The first act, involving his arrest on suspicion of supervising a prostitute, was admitted because the arrest occurred in an area known for prostitution, alongside an individual who one of Petitioner's victims identified as being present when she met him. The second act, involving his arrest for loitering with intent to commit prostitution on Capp Street, was admitted because it occurred in an area known for prostitution and because Petitioner's victims testified that he would stay in the area during their solicitations.

The state appellate court rejected this claim after finding no prejudicial error in the admission of the at-issue bad acts evidence. As to the first, the court highlighted that, although Petitioner was not ultimately charged, his companion in that instance *was* charged with supervising a prostitute and

1   was also present when Petitioner first began prostituting one of the victims. "Given these
2   similarities, the evidence showed a concurrence of common features between the uncharged and
3   charged acts to suggest the existence of a general plan." *Geeter*, 2018 WL 5095090, at *9.
4   Moreover, the court determined that the probative value of this evidence was not substantially
5   outweighed by the probability of prejudice. For starters, the uncharged conduct was "less egregious
6   than the charged acts of forcible rape and oral copulation." *Id.* The arrest itself occurred less than
7   three years before the charged crimes, and the testimony about it only took up a portion of one day.
8   *Id.*

9         As to the second arrest, the court acknowledged that it was "a closer call," *id.*, because Capp
10  Street was also known for drug activity and Petitioner was a known drug dealer. He was not with a
11  known pimp at the time, unlike the first arrest, and he was seen conversing with passersby, unlike
12  the charged crimes in which he directed his victims to negotiate with potential customers.
13  Nevertheless, the appellate court found no abuse of discretion in admitting the evidence. Any
14  possible inference that Petitioner was engaged in drug dealing rather than pimping in the Capp Street
15  arrest was rebutted by the testifying officer, who highlighted that defendant had no money or drugs
16  on his person when he was arrested. The court also noted that the conduct which led to the arrest
17  "could have reasonably been seen as consistent" with Petitioner's practice of staying in the area
18  while his victims solicited, as they testified at trial. *Id.* at 10. Given these facts, the court
19  determined that it was reasonable to conclude that the second arrest incident "sufficiently bore
20  common features with the charged acts to suggest a general plan as to how defendant supervised
21  prostitution in the Capp Street area." *Id.* Its probative value, the court held, was not substantially
22  outweighed by the probability of prejudice, and even if its admission were erroneous, "it was
23  harmless precisely because the evidence of defendant's conduct during the 2013 incident had proved
24  little, if anything, that was not well-established by other evidence." *Id.*

25        Before this court, Petitioner argues that admitting the above-described evidence violated
26  California Evidence Code Section 1101(a)'s prohibition on the admission of uncharged evidence to
27  show propensity or criminal disposition. As he himself notes, however, Section 1101(b) permits
28

evidence of uncharged acts to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident," among other things. The state appellate court rightly recognized that evidence of his prior arrests went to the existence of a general plan and thus satisfied Section 1101(b). Petitioner disagrees, arguing that, under state law, there must be at least an intermediate degree of similarity between a bad act and the charged crime in order to support a rational inference of common design or plan. *See People v. Foster*, 50 Cal. 4th 1301, 1328 (2010) ("[E]vidence of uncharged misconduct must demonstrate not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are individual manifestations.") (internal quotation marks and citation omitted). Here, however, such similarity is present: the first arrest involved the same person and conduct as the charged offenses, while the second arrest occurred in the same area and demonstrated the same pattern of conduct.

Stepping back, the issue here "is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point." *Jammal v. Van de Kamp*, 926 F.2d 918, 919–20 (9th Cir. 1991). And "there is no clearly established Supreme Court precedent holding that the 'admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.'" *Ruiz v. Barnes*, 731 F. App'x 616, 617 (9th Cir. 2018) (quoting *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009)). Generally speaking, "the admission of evidence violates due process only if there are no permissible inferences that the jury may draw from the evidence." *Tapia-Felix v. Ndoh*, No. 19-cv-972-HSG, 2020 WL 353551, at *6 (N.D. Cal. Jan. 21, 2020) (citing *Jammal v. Van de Camp*, 926 F.2d 918, 920 (9th Cir. 1991)). In this case, there was a permissible inference to be drawn from the admission of the prior bad acts (*i.e.*, that they tended to evince a similar plan), so trial was not fundamentally unfair. The trial court's decision to let in evidence of both arrests was also neither arbitrary nor prejudicial, and Petitioner has presented no facts to support the contrary. Because the state appellate court properly rejected this argument on the merits, the claim is denied.

### C. Claim 3: Fact Witness's Opinion Testimony

Petitioner next claims his due process rights were violated because the trial court permitted Detective Bray to testify about the "truthfulness" of another witness. Detective Bray found one of Petitioner's minor victims in Oakland and took her to the police station, where she gave differing accounts of what had occurred. At some point in her statement, she "broke down," and on that basis, Detective Bray testified that he believed her statements to be truthful as a result of her emotional response. Petitioner objects, arguing that Detective Bray impermissibly opined on the victim's credibility as a witness.

The state court of appeal concluded that admitting this testimony was a harmless error. In reaching this conclusion, the court highlighted that "a witness cannot express an opinion concerning the guilt or innocence of the defendant." *Geeter*, 2018 WL 5095090, at *10 (citing *People v. Torres*, 33 Cal.App.4th 37, 46–47 (1995)). "Lay opinion about the veracity of particular statements by another is inadmissible on that issue." *People v. Melton*, 44 Cal.3d 713, 744 (1988). Nevertheless, admitting the opinion was harmless "because it is not reasonably probable that a result more favorable to defendant would have been reached had Detective Bray's opinion testimony been excluded." *Geeter*, 2018 WL 5095090, at *11. Particularly salient to the court's analysis was the fact that, "[j]ust before giving the challenged testimony, Detective Bray testified, without objection, that after Z.H. had broken down to him, he felt she was telling the truth from that point on." *Id.* In other words, "[h]is subsequent statement that he believed her, even if erroneously admitted, simply repeated his previous, unchallenged testimony." *Id.* The court also noted that the jury personally viewed Z.H.'s testimony on the stand and had the opportunity to evaluate her credibility firsthand— credibility that was bolstered by similarities between her testimony and those of the other minor victim, as well as by other evidence in the record "which more than adequately supported defendant's guilt for pimping, pandering, and commercial sex trafficking." *Id.*

The state appellate court correctly assessed this argument. "Habeas relief is available for wrongly admitted evidence only when the questioned evidence renders the trial so fundamentally unfair as to violate federal due process." *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993).

Here, the identified error was harmless for precisely the reasons elaborated by the Court of Appeal: the at-issue testimony merely restated an otherwise unobjected-to statement, the jury had an opportunity to evaluate the victim's credibility firsthand, and the evidence that her testimony was true was overwhelmingly corroborated by other evidence in the record.  This claim is therefore denied.

### D. Cumulative Error

Finally, Petitioner contends that cumulative errors at trial combined to violate his due process rights, even if no single one of them amounts to a constitutional violation.  *See Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).  The state appellate court rejected this argument after concluding that all potential errors were individually and collectively harmless.  *Geeter*, 2018 WL 5095090, at *11 (citing *People v. Williams*, 170 Cal. App. 4th 587, 646 (2009), *People v. Cuccia*, 97 Cal. App. 4th 785, 795 (2002)).

As previously explained, no error of constitutional magnitude occurred in this case.  It follows that no cumulative prejudice is possible.  *See Hayes v. Ayers,* 632 F.3d 500, 524 (9th Cir. 2011).  Like Petitioner's other claims, this claim is denied.

## V. CONCLUSION

For the reasons described above, Petitioner's FAP is dismissed. The Clerk shall terminate Docket No. 19, enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED**.

Dated: March 24, 2025

_____
RICHARD SEEBORG
Chief United States District Judge